<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| BERNACINE BARNES,<br><br>                    Plaintiff,<br><br>        v.<br><br>MONMOUTH COUNTY DIVISION OF<br>SOCIAL SERVICES *et al.*,<br><br>                    Defendants. | Civil Action No. 18-07752 (GC) (RLS)<br><br>**MEMORANDUM OPINION** |

<u>**CASTNER, District Judge**</u>

    **THIS MATTER** comes before the Court upon Defendant's Motion for Summary Judgment (ECF No. 115) pursuant to Federal Rule of Civil Procedure (Rule) 56.  Plaintiff opposed and Defendant replied. (ECF Nos. 118 & 121.)  The Court has carefully reviewed the parties' submissions and decides the matter without oral argument pursuant to Rule 78(b) and Local Civil Rule 78.1(b).  For the reasons set forth below, and other good cause shown, Defendant's Motion is **GRANTED**.

**I.      BACKGROUND**

    **A.      Procedural Background**

    Plaintiff Bernacine Barnes, proceeding *pro se*, filed her initial Complaint in New Jersey Superior Court, Monmouth County, on February 13, 2018.  (ECF No. 1 at 5.[1])  While she did not set forth any specific causes of action in her original Complaint, Plaintiff referenced, among other

---

[1]      Page numbers for record cites (*i.e.*, "ECF Nos.") refer to the page numbers stamped by the Court's e-filing system and not the internal pagination of the parties.

things, civil rights violations, harassment, disability discrimination, and wrongful termination. (*See id.*)  Plaintiff named twenty Defendants, who thereafter removed the matter to this Court based on federal question jurisdiction under 28 U.S.C. § 1331.  (ECF No. 1 at 1-4.)

Defendants then filed a Motion to Dismiss and a Motion for Summary Judgment.  (ECF Nos. 3 & 5.)   Prior to deciding those Motions on the merits, the Court granted Plaintiff leave to amend her Complaint.  (ECF No. 16.)  Plaintiff thereafter filed her First Amended Complaint (FAC),[2] which asserts claims against the Monmouth County Division of Social Services (MCDSS) and two union officials from the Communications Workers of America, AFL-CIO (CWA Defendants), while omitting reference to any of the other previously named Defendants.[3]

In the FAC, Plaintiff asserts the following causes of action against MCDSS and the CWA Defendants: violation of the Americans with Disabilities Act of 1990 (ADA), 42 U.S.C.§ 12101-12213 (Count One against MCDSS); violation of the Age Discrimination in Employment Act of 1967 (ADEA), 29 U.S.C. § 623 (Count Two against MCDSS); violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e (Count Three against MCDSS); breach of duty of fair representation (Count Four against the CWA Defendants); violation of the New Jersey Conscientious Employee Protection Act (CEPA), N.J. Stat. Ann. § 34:19-1 (Count Five against MCDSS); violation of the New Jersey Law Against Discrimination (NJLAD) (age) N.J. Stat. Ann. § 10:5-1 (Count Six against MCDSS); violation of the NJLAD (disability/handicap), N.J. Stat.

---

[2]     Plaintiff has been represented by counsel during limited parts of this case.  She filed her initial Complaint *pro se*, (ECF No. 1), but filed her FAC with the assistance of counsel, (ECF No. 16).  Plaintiff has been proceeding *pro se* since her counsel withdrew on December 10, 2019.  (ECF No. 35.)

[3]     The Court concludes that Plaintiff abandoned her claims against the previously named Defendants.  *See Thomas v. Plumeri*, Civ. No. 23-20372, 2024 WL 4171417, at *1 (D.N.J. Sept. 11, 2024) ("[S]ubmission of an amended complaint effectively constitutes an abandonment of any prior complaints filed by a plaintiff.") (internal quotation marks and citations omitted).

Ann. § 10:5-1 (Count Seven against MCDSS); violation of the NJLAD (ancestry/descent/religion) N.J. Stat. Ann. § 10:5-1 (Count Eight against MCDSS).  (*See generally* ECF No. 18.)

In response to a Motion to Dismiss brought by the CWA Defendants, (ECF No. 21), the Court dismissed Count Four of the FAC without prejudice and granted Plaintiff thirty days to amend.  (ECF Nos. 21 & 25.)  Plaintiff did not amend the FAC, and the CWA Defendants were thereafter terminated from the action.  (ECF No. 29.)  Accordingly, only Counts One through Three and Five through Eight of the FAC remain as to MCDSS, the only remaining Defendant.

MCDSS filed this Motion for Summary Judgment on February 17, 2024.  (ECF No. 115.)  On August 29, 2024, Plaintiff filed her Responsive Statement of Material Facts in response to the Court's Order.  (ECF Nos. 123 & 124.)[4]

### B.  *Pro Se* Leniency

Local Civil Rule 56.1 requires opponents of summary judgment to submit "a responsive statement of material facts, addressing each paragraph of the movant's statement, indicating agreement or disagreement and, if not agreed, stating each material fact in dispute and citing to the affidavits and other documents submitted in connection with the motion."  L. Civ. R. 56.1(a).  While MCDSS included a Statement of Material Facts with its Motion for Summary Judgment in accordance with the local rules, (ECF No. 115-2), Plaintiff did not initially submit the required Responsive Statement of Material Facts with her opposition brief.  Given that Plaintiff is proceeding *pro se*, the Court afforded her the opportunity to submit a Responsive Statement of Material Facts that complied with the local rules.  (ECF No. 123.)

---

[4]    MCDSS's Statement of Material Facts (SMF) is at ECF No. 115-2 and Plaintiff's Responsive Statement of Material Facts (RSMF) is at ECF No. 123

Rather than responding to each of the fifty-five purportedly undisputed material facts set forth by MCDSS, Plaintiff's submission consists largely of materials copied from other sources, including transcripts, letters, emails, and prior court filings. A substantial portion of Plaintiff's response includes her grievances with the Court. (*See generally* RSMF.) The Court identified only four instances in which Plaintiff set forth her responses in separate numbered paragraphs and clearly identified whether a purported fact was admitted or denied. But even in those instances, Plaintiff's responses do not appear to correspond to MCDSS's Statement of Material Facts. *Compare* SMF ¶ 2 ("Plaintiff was 55 years old at the time her amended complaint was filed on August 9, 2018") *with* RSMF at 29 (labeled as paragraph 2 and "disputed" and stating "Bernacine Marie Barnes EEOC Statements. The truth of the fact. I reached out, was denied. In multitudinous area I filed in seek of help. I refused to upset [myself] any further with pain").

Although Plaintiff's Responsive Statement of Material Facts is difficult to parse, the Court is mindful that it must afford her leniency as a *pro se* litigant. *See Bailey v. Millenium Grp. of Del.*, Civ. No. 18-1188, 2023 WL 6971541, at *2 (D.N.J. Oct. 23, 2023) ("The Court is obligated to construe *pro se* filings liberally." (citing *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 244-45 (3d Cir. 2013))). Courts have extended this leniency to *pro se* litigants who have not complied with Local Civil Rule 56.1. *See Stewart v. Kelchner*, 358 F. App'x 291, 294 n.9 (3d Cir. 2009) ("In light of the fact that [the plaintiff] was acting *pro se*, we hesitate to adopt the District Court's approach of accepting the defendants' statement of material facts as uncontested solely because [the plaintiff] failed to submit a paragraph-by-paragraph response."); *see also Ramziddin v. Speziale*, Civ. No. 07-5303, 2009 WL 4827492, at *2 (D.N.J. Dec. 10, 2009) ("A court may excuse the failure to submit a Rule 56.1 statement where there is no evidence of bad faith.").

In light of Plaintiff's *pro se* status, the Court finds it appropriate to consider Plaintiff's entire submission to determine whether there is a genuine dispute of material fact. *See Shirden v. Cordero*, 509 F. Supp. 2d 461, 463 n.1 (D.N.J. 2007) ("[L]ack of compliance with the Local Civil Rules has made it difficult and time-consuming for the Court to determine whether a genuine issue of material fact exists. Nonetheless, the Court, having found no evidence of bad faith, will decide [the] [d]efendants' motion on its merits, relying on the facts put forth in the Final Pretrial Order . . . ; the [p]laintiff's answers to interrogatories; and the additional facts cited in the parties' respective briefs."). Even applying this deferential approach, the Court is unable to discern any genuine dispute of material fact that would preclude it from granting summary judgement in favor of MCDSS.

### C.    Facts Undisputed or Substantiated by Record Evidence[5]

Plaintiff is an African American woman who openly professes to be a devout Jehovah's witness. (SMF ¶ 3; *see also* ECF No. 1 ¶ 8.) Plaintiff, who was born in 1963, was 55 years old at the time she filed her Amended Complaint. (SMF ¶¶ 1-2.) She began working as a clerk in the Customer Care Center for MCDSS in May 1989. (*Id.* ¶ 4; *see also* ECF No. 18 ¶ 14.) Plaintiff's duties involved assisting Monmouth County residents with requests for cash assistance, food stamps, emergency shelter, and housing and medical benefits. (ECF No. 18 ¶ 7.)

Plaintiff received only cost-of-living raises and no promotions while employed by MCDSS. (*Id.* ¶ 9.) Although she sought to have her position reclassified in 2012, the New Jersey

---

[5]    On a motion for summary judgment, the Court "draw[s] all reasonable inferences from the underlying facts in the light most favorable to the nonmoving party." *Jaffal v. Dir. Newark N.J. Field Off. Immigr. & Customs Enf't*, 23 F.4th 275, 281 (3d Cir. 2022) (quoting *Bryan v. United States*, 913 F.3d 356, 361 n.10 (3d Cir. 2019)). Although Plaintiff claims that MCDSS omitted facts favorable to her from its moving papers, she does not dispute the facts that MCDSS puts forth in its Statement of Undisputed Material Facts. (*See generally* ECF No. 118.)

Civil Service Commission determined that Plaintiff's job title was appropriate for her assigned duties.  (SMF ¶ 55(a).)  While Plaintiff alleges that a Caucasian woman was promoted to a supervising clerk position under "irregular circumstances" in April 2015, it is undisputed that Plaintiff was not qualified for that position.  (*Id.* ¶ 55(b).)

In 2014, Plaintiff was diagnosed with a medical condition affecting her spine.  (ECF No. 18 ¶ 10.)  MCDSS does not dispute Plaintiff's medical history and does not dispute that her medical condition qualified as a covered disability for which Plaintiff was entitled to reasonable accommodations.  (*See* ECF No. 115-3 at 17.)  When Plaintiff sought accommodations for her spinal condition, including permission to wear sneakers and to use an ergonomic chair, MCDSS granted her requests.  (ECF No. 18 ¶ 25.)  MCDSS never withdrew Plaintiff's authorization to wear sneakers or use an ergonomic chair.  (SMF ¶ 55(j).)  Plaintiff testified in her deposition that after she was already granted permission to wear sneakers, MCDSS asked all employees wearing sneakers to submit disability authorization forms.  (*See* ECF No. 115-4 at 122.)  While MCDSS required Plaintiff to submit additional paperwork to continue wearing sneakers, it paid for Plaintiff to visit a doctor to receive the updated disability paperwork.  (SMF ¶ 55(j).)

In May 2015, Plaintiff alleges that she was not trained on a new call-center program called "Snap Trac."  (ECF No. 18 ¶ 17.)  Plaintiff complained to a supervisor that she was denied the opportunity to train on the program because of her race.  (*Id.*)  She reported that a new hire, who was Caucasian, was being trained on the program, while other women of color were not given the same opportunity.  (*Id.*)  However, eighteen other agents in the Customer Care department, fourteen of whom were Caucasian, were similarly not trained on the Snap Trac program.  (SMF ¶ 55(c).)

In May 2017, Plaintiff lodged an internal complaint against one of her supervisors, Robert Jaichner. (*See* ECF No. 115-4 at 39-40.) In her complaint to the Monmouth County Department of Human Resources Office of Professional Standards (OPS), she alleged that Jaichner conducted himself inappropriately in a counseling session with her, including by slamming his fist on a table and glaring at her. (*Id.* at 40.) In July 2017, Plaintiff filed a citizen's complaint with the Freehold Township Municipal Court against Jaichner, claiming that he had assaulted her during the counseling session. (*Id.*) In her citizen's complaint, Plaintiff alleged that Jaichner had lunged at her and violated her, despite the fact that she was disabled. (*Id.*) One of the bases for Plaintiff's ultimate termination from MCDSS was that her "certified statement to [Freehold Municipal Court was] contrary to statements provided to the [OPS] investigators." (*Id.*) The criminal complaint against Jaichner was dismissed by the Freehold Township Municipal Court. (SMF ¶ 55(m).)

On August 17, 2017, OPS issued Plaintiff a Notice of Immediate Suspension and Preliminary Notice of Disciplinary Action. (*Id.* ¶ 5.) Plaintiff was suspended effective immediately and OPS scheduled a hearing to consider her termination for September 11, 2017. (ECF No. 115-2 ¶ 7.) Plaintiff attended the hearing with the vice president of her collective bargaining unit, and she was given an opportunity to respond to the charges asserted by OPS. (SMF ¶ 9; *see also* ECF No. 115-4 at 45, 54.)

OPS issued its Final Notice of Disciplinary Action (MCDSS Final Notice) on October 13, 2017. The MCDSS Final Notice outlined the charges against Plaintiff, which included violations of the following subsections of N.J. Stat. Ann. § 4A:2-2.3(a): (1) incompetency, inefficiency or failure to perform duties; (2) insubordination; (6) conduct unbecoming a public employee; (7) neglect of duty; and (12) other sufficient cause. Plaintiff was also charged with violating Monmouth County Policy 701 Regarding Employee Conduct and Work Rules; violating

Monmouth County Policy 722 Regarding Workplace Etiquette; and violating Monmouth County Policy Regarding Prohibiting Workplace Discrimination and Harassment. (ECF No. 115-4 at 38.)

The MCDSS Final Notice also outlined specific examples of Plaintiff's misconduct. For example, Plaintiff placed on hold a caller who was seeking assistance so Plaintiff could microwave her food. (*Id.* at 41.) After the call concluded, Plaintiff remarked, "[s]ee, when you put them on hold and make them wait, they are nicer when you tell them the same thing." (*Id.*) Plaintiff does not address this incident in her opposition papers. (*See generally* ECF No. 118.) In another instance, Plaintiff sent a client's confidential personal information, including their name, date of birth, and social security number to an unidentified person whom she had never met. (ECF No. 115-4 at 41-42.) Plaintiff does not dispute that she failed to redact the confidential information, stating that "[u]nder stress and in error. I forgot to redact." (RSMF at 7.) Plaintiff was suspended for twenty days after this incident. (ECF No. 115-4 at 50.)

Further, the MCDSS Final Notice outlines a meeting that Plaintiff had with three supervisors regarding the paperwork needed for her accommodation to wear sneakers. It states that Plaintiff "displayed unacceptable workplace conduct and etiquette toward" her superiors by telling them that she would create an audio recording of her conversation with them. (ECF No. 115-4 at 42.) After the supervisors told Plaintiff that she could not record the conversation, she stated "then this conversation will not happen" before slamming the door shut. (*Id.* at 42.) This incident led to Plaintiff receiving a five-day suspension, which was later reduced to three days. (*Id.*)

Finally, the MCDSS Final Notice included the following characterization of Plaintiff's conduct:

> You have consistently demonstrated a pattern of unacceptable conduct toward your coworkers and superiors. You are

consistently insubordinate, boisterous and disruptive. Your actions are intentionally designed to undermine your supervisor's authority and deflect from your failure to adhere to established policies. You inappropriately react to corrective and constructive criticism by portraying yourself as a victim and displaying undisciplined and destructive emotional behavior. Your toxic behavior has created an extremely unhealthy working environment that is detrimental to the mission of the Division of Social Services. You are unfit for duty as your conduct compromises the effective delivery of services and ability to maintain order. Your egregious conduct damages the workplace morale, creates an unprofessional working environment and demeans the public trust which cannot be tolerated by the County of Monmouth, the Department of Human Services and the Division of Social Services.

[(*Id.* at 42-43.)]

Plaintiff's termination was upheld by OPS due to Plaintiff's "pattern of gross misconduct." (*Id* at 43.) Plaintiff—then a senior receptionist—was officially terminated from her employment at MCDSS on October 13, 2017. (*Id.*) Her termination was effective retroactively to August 17, 2017, the date on which she was suspended without pay. (*Id.*; SMF ¶¶ 5, 7.) No other senior receptionist was hired to replace Plaintiff. (SMF ¶ 55(n); *see also* ECF No. 115-4 at 171.)

While working at MCDSS, Plaintiff raised several allegations of discrimination. Plaintiff filed charges of discrimination with the United States Equal Employment Opportunity Commission (EEOC) against MCDSS in 2012, 2014, 2015, and 2016.[6] (SMF ¶¶ 11-40.) Through her EEOC charges, Plaintiff claimed that she was being discriminated against based on her race, disability, religion, and age, and that she was subject to retaliation and a hostile work environment. (*Id.*) She also alleged violations of Title VII, the ADA, and the ADEA. (*Id.*) Her charges related to conduct that allegedly occurred between December 28, 2011 and August 23, 2016. (*See id.*) The EEOC dismissed each of Plaintiff's charges, and in each instance issued Plaintiff a dismissal

---

[6]     Plaintiff filed her charges with the EEOC on April 6, 2012; July 18, 2014; July 28, 2015; April 20, 2016; and December 6, 2016. (SMF ¶¶ 11, 17, 23, 29, 35.)

letter notifying Plaintiff of her right to file suit within 90 days. (*Id.*) The latest right-to-sue letter issued to Plaintiff before she filed suit was issued on June 19, 2017. Plaintiff filed suit on February 13, 2018. In May 2018, Plaintiff filed an intake form with the EEOC alleging that a discriminatory action took place on August 17, 2017. (*Id.* ¶ 45.) The EEOC thereafter sent Plaintiff a further dismissal letter on May 21, 2018. (*Id.* ¶ 47.)

## II.   LEGAL STANDARD

Summary judgment shall be granted if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A dispute is "genuine" if it could lead a "reasonable jury [to] return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id.* When deciding the existence of a genuine dispute of material fact, the Court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251-52. The Court must grant summary judgment if any party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322. "[I]nferences, doubts, and issues of credibility should be resolved against the moving party." *Meyer v. Riegel Prods. Corp.*, 720 F.2d 303, 307 n.2 (3d Cir. 1983).

## III.   DISCUSSION

### A.   Federal Law Claims (Counts One through Three)

MCDSS moves for summary judgment on Plaintiff's federal claims—for violations of Title VII, the ADA, and the ADEA—on the grounds that Plaintiff's claims are either time-barred under

the applicable statute of limitations or must be dismissed because Plaintiff has failed to exhaust administrative remedies.  (*See* ECF No. 115-3 at 11-13.)

First, MCDSS argues that to the extent Plaintiff's federal law claims arise out of conduct occurring on or before December 6, 2016—the date on which Plaintiff filed her last charge with the EEOC—they are time-barred because Plaintiff did not file suit within 90 days of the EEOC dismissing her charges.  (ECF No. 115-4 at 11.)  The Court agrees.

When the EEOC receives a charge of discrimination, it "investigate[s] 'to determine whether there is reasonable cause to believe that the charge is true.'"  *McLane Co. v. E.E.O.C.*, 581 U.S. 72, 75 (2017), *as revised* (Apr. 3, 2017) (citations omitted).   "In the event that the EEOC determines there is 'n[o] reasonable cause to believe that the charge is true,' the Commission is to dismiss the charge and notify the complainant of his or her right to sue in court."  *Fort Bend Cnty., Texas v. Davis*, 587 U.S. 541, 545 (2019).  This "right-to-sue letter" provides that any such suit must be commenced within 90 days.  *See Powell v. Verizon N.J., Inc.*, Civ. No. 19-08418, 2022 WL 2187997, at *4 n.6 & n.7 (D.N.J. June 17, 2022).[7]  The 90-day time limit applies to claims brought under Title VII, the ADA, and the ADEA.  *See Covington v. URS Corp.*, Civ. No. 11-04516, 2013 WL 2181282, at *2 (D.N.J. May 20, 2013) ("In the event that the EEOC issues a right-to-sue letter, an ADEA claimant must file its federal suit within ninety days after receipt of the letter."); *Oloo v. Bloomberg LP*, Civ. No. 12-4943, 2013 WL 706292, at *2 (D.N.J. Feb. 26, 2013) ("A complaint alleging discrimination under Title VII and the ADA must be filed "within 90 days of the date on which the complainant has notice of the EEOC's decision not to pursue the administrative charge.").

---

[7]     In the alternative, the complainant may file a suit if the EEOC does not issue a right-to-sue letter within 180 days of the complaint.  *Powell v. Verizon N.J., Inc.*, 2022 WL 2187997, at *4.

This 90-day period within which a plaintiff must file a complaint is treated as a statute of limitations. *Seitzinger v. Reading Hosp. & Med. Ctr.*, 165 F.3d 236, 239-40 (3d Cir. 1999). ("[I]t is settled that the ninety-day time limit in which a plaintiff must file a Title VII action is akin to a statute of limitations rather than a jurisdictional bar.") Courts have "strictly construed the 90-day period and held that, in the absence of some equitable basis for tolling, a civil suit filed even one day late is time-barred and may be dismissed." *Burgh v. Borough Council of Borough of Montrose*, 251 F.3d 465, 470 (3d Cir. 2001). Nevertheless, a claim may be tolled "when it appears that (1) the defendant actively misled the plaintiff respecting the reason for the plaintiff's discharge, and (2) this deception caused the plaintiff's non-compliance with the limitations provision." *Ruehl v. Viacom, Inc.*, 500 F.3d 375, 384 (3d Cir. 2007).

Plaintiff does not appear to deny that she received the EEOC right-to-sue letters. *Cf. Hayes v. N.J. Dep't of Hum. Servs.*, 108 F.4th 219, 222 (3d Cir. 2024) (finding that the plaintiff could overcome the presumption that she received a right-to-sue letter by submitting a sworn declaration that she did not receive it). To the contrary, Plaintiff appears to concede that the EEOC dismissed her charges. (*See* RSMF at 3 ("Bernacine Marie Barnes EEOC Statements. The truth of the fact. I reached out, was denied. In multitudinous area I filed in seek of help. I refused to upset [myself] any further with pain.").) And there is no indication in the record that equitable tolling applies in this case, which was filed over seven months after Plaintiff received her June 2017 right-to-sue letter. *See Seitzinger v. Reading Hosp. & Med. Ctr.*, 165 F.3d 236, 240 (3d Cir. 1999) ("[E]quitable tolling may be appropriate when a claimant received inadequate notice of her right to file suit, where a motion for appointment of counsel is pending, or where the court has misled the plaintiff into believing that she had done everything required of her.").

The Court thus finds that Plaintiff's federal claims related to conduct occurring before December 6, 2016, the date on which she filed her last EEOC charge before filing this action, are time-barred.  Based on the undisputed facts in the record, Plaintiff received EEOC right-to-sue letters on five separate occasions and failed to file suit within 90 days of any of those notices.  (*See* SMF ¶¶ 11-40.)  To the extent Plaintiff's federal claims relate to conduct occurring prior to December 6, 2016, they must be dismissed.

Second, MCDSS argues that Plaintiff has failed to exhaust administrative remedies for conduct alleged to have occurred after December 6, 2016 and before her Complaint was filed in February 2018.  "Prior to commencing a lawsuit under Title VII, the ADA, or the ADEA, a plaintiff must first file a charge with the EEOC."  *Canete v. Barnabas Health Sys.*, Civ. No. 12-7222, 2013 WL 5305236, at *4 (D.N.J. Sept. 18, 2013) (citing *Webb v. City of Phila.*, 562 F.3d 256, 262 (3d Cir. 2009) and *Snyder v. Baxter Healthcare, Inc.*, 393 F. Appx. 905, 908 (3d Cir. 2010)).  "Under Title VII, a charge of race discrimination in employment must be filed with the EEOC within 180 days of the occurrence of the alleged unlawful employment practice.  *Burgh*, 251 F.3d at 469.[8] The same is true for both the ADA and the ADEA.  *See Morris v. Eberle & BCI, LLC*, Civ. No. 13-06113, 2014 WL 4352872, at *4 (D.N.J. Sept. 3, 2014) ("[I]n order to file an ADA claim, a plaintiff must first file an administrative charge with the EEOC within 180 days of the alleged discriminatory act." (citing 42 U.S.C. § 2000e-5(e)(1)); *DeJesus v. Kids Acad., Inc.*, Civ. No. 18-13822, 2021 WL 3879076, at *2 (D.N.J. Aug. 31, 2021) ("[U]nder the ADEA, a complainant must file a Charge of Discrimination with the EEOC within 180 days after the alleged unlawful act of

---

[8]    In New Jersey, the timeframe to file a charge of discrimination is extended to 300 days if "the plaintiff first institutes proceedings with a 'State or local agency with authority to grant or seek relief from such practice.'"  *See DeJesus v. Kids Acad., Inc.*, Civ. No. 18-13822, 2021 WL 3879076, at *1 n.3 (D.N.J. Aug. 31, 2021).

discrimination[.]" (citing *Seredinski v. Clifton Precision Prods. Co.*, 776 F.2d 56, 62-63 (3d Cir. 1985))).

It is undisputed that Plaintiff did not file an EEOC charge any time between December 6, 2016 and February 13, 2018—the date on which she brought this case. Although she filed an EEOC charge in May 2018, which was ultimately dismissed, that does not save her claim as actions taken after the filing of a suit cannot form the basis of a claim. *See Hurley v. Atl. City Police Dep't*, Civ. No. 93-260, 1995 WL 854478, at *17 n.15 (D.N.J. Aug. 4, 1995), *aff'd*, 174 F.3d 95 (3d Cir. 1999) ("An EEOC charge is a prerequisite to a Title VII action . . . and actions taken after the filing cannot form the basis for a claim." (internal citation omitted)). Also, Plaintiff's final EEOC charge was filed more than 180 days after the alleged August 17, 2017 discriminatory action. (SMF ¶ 46). Thus, the Court will also dismiss Plaintiff's federal claims based on conduct occurring after December 6, 2016. MCDSS's Motion is granted as to all of Plaintiff's federal claims (Counts One through Three).[9]

### B.    State Law Claims

#### 1.    CEPA Claim (Count Five)

CEPA is intended to protect whistleblowers from retaliation by their employers. *Lippman v. Ethicon, Inc.*, 119 A.3d 215, 224 (N.J. 2015). The Act is designed to "encourage employees to report illegal or unethical workplace activities and to discourage public and private sector employers from engaging in such conduct." *Id.* (quoting *Abbamont v. Piscataway Twp. Bd. of Educ.*, 650 A.2d 958, 971 (N.J. 1994)). CEPA applies where an employee reports their coworker's misconduct. *Higgins v. Pascack Valley Hosp.*, 730 A.2d 327, 338 (N.J. 1999) ("CEPA prohibits

---

[9]    Since the Court agrees that all of Plaintiff's federal claims are time-barred, the Court will not address the merits of each claim.

an employer from taking retaliatory action against an employee who has a reasonable basis for objecting to a co-employee's activity, policy, or practice covered [by CEPA]."). Analyzing a CEPA claim requires a three-part inquiry. "First, the court must determine if the plaintiff has established a prima facie case of retaliatory discharge under CEPA." *Morro v. DGMB Casino LLC,* 112 F. Supp. 3d 260, 282 (D.N.J. 2015). If a plaintiff makes out a prima facie case, "the burden shifts to [the] defendant to articulate some legitimate nondiscriminatory reason for making the adverse employment decision." *Id.* If the defendant meets that burden, "the burden shifts back to the plaintiff, who, in order to survive summary judgment, must raise an issue of fact that the articulated reason is a pretext for the retaliation or that a discriminatory reason more likely motivated the employer." *Id.*

Plaintiff claims that MCDSS violated CEPA for terminating her in response to a criminal complaint she filed against her supervisor and for writing letters to the Monmouth County Freeholders. (*See* ECF No. 18 ¶¶ 53-56.) To establish a prima facie case under CEPA, Plaintiff must first demonstrate that: (1) she reasonably believed that MCDSS's conduct was violating either a law, rule, or regulation promulgated pursuant to law, or a clear mandate of public policy; (2) she performed a "whistle-blowing" activity described in N.J. Stat. Ann. § 34:19-3c; (3) an adverse employment action was taken against her; and (4) a causal connection exists between the whistle-blowing activity and the adverse employment action. *Dzwonar v. McDevitt*, 828 A.2d 893, 900 (N.J. 2003). The crux of Plaintiff's CEPA claim is that: (1) she was assaulted by her supervisor, (2) she reported that assault to the police, and (3) she was thereafter terminated.[10]

---

[10] Plaintiff also alleges that she was retaliated against for writing letters to the Monmouth County Freeholders, but there are no facts in the record to support this allegation, so summary judgment in favor of MCDSS is appropriate on that issue. *See Veverka v. Royal Caribbean Cruises Ltd.*, 649 F. App'x 162, 168 (3d Cir. 2016) ("[A]t summary judgment, [the non-moving party] must 'cit[e] to particular parts of materials in the record, including depositions, documents,

MCDSS contends that Plaintiff's CEPA claim must fail because her claims do not implicate a public harm, but rather are of a personal nature.  (ECF No. 115-3 at 27 (citing *Maw v. Advanced Clinical Communications, Inc.*, 179 N.J. 439, 445 (2004) and *Mehlman v. Mobil Oil Corp.*, 153 N.J. 163, 188 (1998).)  However, courts in this district have found that employees reporting an assault at work have stated a prima facie CEPA claim.  *See Leverett v. Williams-Sonoma Direct, Inc.*, Civ. No. 23-2405, 2023 WL 9039568, at *3 (D.N.J. Dec. 30, 2023) (holding that a plaintiff who alleged "that his co-workers grabbed him, tried to strangle him, and repeatedly punched him" and was terminated eight days later stated a claim for a CEPA violation); *Suwanphap v. Pad Thai, Inc.*, Civ. No. 10-1762, 2010 WL 2426039, at *3 (D.N.J. June 10, 2010) (finding that the plaintiff pled "more than a private grievance" where he alleged that he witnessed an assault, testified in a municipal court proceeding about the assault, and was thereafter denied additional work opportunities);  *Smith v. TA Operating, LLC*, Civ. No. 10-02563, 2012 WL 3527696, at *12 (D.N.J. Aug. 13, 2012) (finding that CEPA claims based on an employee reporting an assault were sufficient to survive summary judgment).

However, even if Plaintiff were able to succeed in establishing a prima facie case for a CEPA violation, summary judgment would still be appropriate if the undisputed facts establish a legitimate non-discriminatory reason for Plaintiff's termination.  *See, e.g.*, *Blackburn v. United Parcel Serv., Inc.*, 179 F.3d 81, 94 (3d Cir. 1999) (holding that even if the plaintiff "had presented sufficient evidence to meet his prima facie burden at the summary judgment stage" that summary judgment was still appropriate in favor of the employer because the plaintiff did not present evidence of pretextual termination).  In response to a CEPA claim, an "employer is always free to

---

electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers, or other materials. . . . A nonmoving party cannot create a genuine issue of fact by citing the pleadings." (citations omitted)).

show that the discharge was animated by incompetence, disloyalty, reduction in force, or any other legitimate reason." *Parker v. M & T Chemicals, Inc.*, 566 A.2d 215, 220 (N.J. Super. Ct. App. Div. 1989).  Here, the undisputed facts show that MCDSS had several legitimate nondiscriminatory reasons to terminate Plaintiff, including prior suspensions for unacceptable workplace conduct and disclosing a client's confidential information.  (*See* ECF No. 115-4 at 50, 51.)

Since MCDSS has put forth several legitimate nondiscriminatory reasons to terminate Plaintiff, the burden then shifts back to Plaintiff to prove that those reasons are pre-textual.  *See Blackburn v. United Parcel Serv., Inc.*, 179 F.3d at 92 ("For summary judgment purposes, the court must determine whether the plaintiff has offered sufficient evidence for a reasonable jury to find that the employer's proffered reason for the discharge was pretextual and that retaliation for the whistleblowing was the real reason for the discharge.").  "Pretext is 'a purpose or motive alleged or an appearance assumed in order to cloak the real intention or state of affairs;' in essence, pretext is a 'cover-up' for a discriminatory purpose."  *Bowles v. City of Camden*, 993 F. Supp. 255, 262 (D.N.J. 1998) (citation omitted).  Summary judgment must be denied where there exists a "direct clash of facts" about the reasons for the termination.  *Gary v. The Air Grp., Inc.*, Civ. No. 02-2589, 2007 WL 2892906, at *6 (D.N.J. Sept. 28, 2007).  But even viewing the facts in the light most favorable to Plaintiff, there is no such direct clash of facts here.  *Cf. Smith*, 2012 WL 3527696, at *10 (plaintiff survived summary judgment where she established that "inconsistencies and uncertainties surrounding [the defendant's] proffered reason for the discharge raise[ed] genuine issues of material fact" by pointing to evidence that, despite the employer's assertion to the contrary, she had never offered her resignation).

Plaintiff has not carried her burden to rebut the legitimate nondiscriminatory reasons for her termination.  *See, e.g.*, *Milham v. Cortiva Educ., Inc.*, Civ. No. 06-04226, 2007 WL 3146669,

at *5 (E.D. Pa. Oct. 25, 2007), *aff'd*, 302 F. App'x 70 (3d Cir. 2008) ("In order to withstand a motion for summary judgment, the plaintiff must present evidence to create a genuine issue of material fact regarding the credibility of the defendant's legitimate non-discriminatory reason for its adverse employment action against the plaintiff."); *see also Zaffuto v. Wal-Mart Stores, Inc.*, 130 F. App'x 566, 571 (3d Cir. 2005) (affirming grant of summary judgment in favor of CEPA defendant where the plaintiff was unable to rebut two nonretaliatory reasons for terminating the plaintiff and the plaintiff was unable to raise any facts to suggest those reasons were pretextual). Ultimately, to survive summary judgment, a plaintiff must "raise a genuine issue of fact suggesting pretext by providing some evidence establishing a reasonable inference that the employer's proffered reason for the adverse employment decision was weak, implausible, inconsistent, incoherent or contradictory so as to be unworthy of credence." *Bowles*, 993 F. Supp. at 262. Plaintiff has not done so here.

The MCDSS Final Notice identifies a number of instances of Plaintiff's misconduct, which appear undisputed based on the Court's review of Plaintiff's submission. *See Morro*, 112 F. Supp. 3d at 285 (granting summary judgement to defendant on a CEPA claim where the defendant "set forth a legitimate, nondiscriminatory reason for terminating" the plaintiff, which the plaintiff could not rebut). The Court thus grants summary judgment to MCDSS on Plaintiff's CEPA claim.

### 2.    *NJLAD Claims (Counts Six through Eight)*

Plaintiff brings claims under the NJLAD for alleged discrimination based on her age (Count Six), disability/handicap (Count Seven), and ancestry/descent/religion (Count Eight). More specifically, Plaintiff alleges that there was a disparate impact based on her membership in several protected classes and that MCDSS created a hostile work environment. MCDSS argues that it is entitled to summary judgment on Plaintiff's NJLAD claims for two reasons. (*See* ECF No. 18 ¶¶ 57-76.) First, it asserts that Plaintiff's claims related to actions taken before February

13, 2016—two years before Plaintiff filed her Complaint—are barred under NJLAD's two-year statute of limitations.  (ECF No. 115-4 at 15.)  Second, it asserts that Plaintiff does not support her NJLAD claims with any allegations of discrimination between February 13, 2016 and February 13, 2018, the date on which she filed this action.  (*Id.* at 19.)  The Court will address each in turn.

### a.  Statute of Limitations

NJLAD claims are generally subject to a two-year statute of limitations.  *See Montells v. Haynes*, 627 A.2d 654, 655 (N.J. 1993) (holding that "a single statute of limitations should apply to all [NJ]LAD claims" and that "the two-year personal-injury statute of limitations applies").  MCDSS argues that the two-year statute of limitations bars Plaintiff from bringing claims related to conduct on or before February 13, 2016—two years prior to the date on which she filed her original Complaint.  (ECF No. 115-3 at 15.)  The Court agrees.

In limited instances, courts may use equitable tolling to extend the NJLAD's two-year statute of limitations.  *See Brown v. R.R. Grp. Ltd. Liab. Co.*, Civ. No. 16-04602, 2017 WL 1365215, at *2 (D.N.J. Apr. 7, 2017) (noting that equitable tolling applies "where a plaintiff is misled and as a result fails to act within the prescribed time limit, or where a plaintiff is prevented from timely asserting his or her claims because of gross attorney error").  Equitable tolling may apply "when some extraordinary circumstance prevents a plaintiff from asserting a right despite the exercise of reasonable diligence."  *Hanani v. State of New Jersey Dep't of Env't Prot.*, 205 F. App'x 71, 77 (3d Cir. 2006).  Thus, a plaintiff claiming equitable tolling "bears the burden to show that [s]he diligently pursued h[er] rights and that some 'extraordinary circumstance stood in [the] way.'"  *Id.* (quoting *Satterfield v. Johnson*, 434 F.3d 185, 188 (3d Cir. 2006) (third alteration in original).  Here, Plaintiff has not argued that equitable tolling applies, nor does the Court see any basis to apply the doctrine.  As evidenced by the fact that Plaintiff received right-to-sue letters

from the EEOC in 2013, 2014, and 2015, Plaintiff was aware of her potential claims against MCDSS but did not file suit within the statute of limitations.  (*See* SMF ¶ 13, 21, 27.)

Courts have also recognized that separate acts of discrimination may sometimes be viewed as a "single, continuing violation."  *Hanani*, 205 F. App'x at 78; *see also Williams v. Twp. of Lakewood*, Civ. No. 17-11401, 2020 WL 7391009, at *12 (D.N.J. Dec. 15, 2020) (explaining that New Jersey "recognizes the 'continuing violation doctrine,' which provides that when an individual experiences a 'continual, cumulative pattern of tortious conduct' the limitations period begins only when the wrongful action ceases.").  "To prevail on a continuing violation theory . . . the plaintiff must show more than the occurrence of isolated or sporadic acts of intentional discrimination."  *Jewett v. Int'l Tel. & Tel. Corp.*, 653 F.2d 89, 91 (3d Cir. 1981). "[D]iscrete acts—such as the demotions, transfers, failures to promote, and other adverse employment actions that plaintiffs allege they experienced due to their [protected class]—do not fall under the continuing violations doctrine and are subject to the NJLAD's two-year statute of limitations. *Sgro v. Bloomberg L.P.*, 331 F. App'x 932, 938 (3d Cir. 2009).  Therefore, "[t]o allege a continuing violation, the plaintiff must show that all acts which constitute the claim are part of the same unlawful employment practice and that at least one act falls within the applicable limitations period."  *Mandel v. M & Q Packaging Corp.*, 706 F.3d 157, 165-66 (3d Cir. 2013).

Based on a review of the record, the Court finds no reason to apply the continuing violation doctrine.  In support of her claims, Plaintiff points to several discrete incidents that occurred outside of the two-year statute of limitations.  For example, Plaintiff claims that between 2000 and 2003 "she professed her faith as a devout Jehovah's Witness and would call upon her Lord and Savior" and in response was "ridiculed and told she was insane and needed a psychiatrist."  (ECF No. 18 ¶ 14; SMF ¶ 55(f).)  Plaintiff also claims that a Caucasian woman was promoted under

"irregular circumstances" in September 2015. (ECF No. 18 ¶ 13.) Plaintiff also alleges that several incidents occurred within the limitations period, including that she was "accosted for wearing sneakers" and written up for insubordination in September 2016, (*Id.* ¶ 21), and that a supervisor accused Plaintiff of making false accusations when she reported hazardous paint fumes at work in February 2016, (*id.* ¶ 15). Taken together, these incidents do not establish a "continual" or "cumulative" pattern to warrant the application of the continuing violation doctrine. *See Illas v. Gloucester Cnty. Sheriff's Dep't*, Civ. No. 14-4061, 2015 WL 778806, at *5 (D.N.J. Feb. 24, 2015) (declining to apply the continuing violation doctrine where the plaintiff's complaint was "an amalgam of discrete acts and general allegations of hostile work environment and discrimination"). Nor has Plaintiff pointed to any evidence to suggest that MCDSS's acts were based on the same severe and pervasive course of action. *See Cascina v. Hackensack Univ. Med. Ctr.*, Civ. No. 19-17571, 2021 WL 4490249, at *5 (D.N.J. Oct. 1, 2021) (finding there had been no continuing violation where the plaintiff did "not demonstrate a severe and pervasive course of violations by the employer"); *cf. Shepherd v. Hunterdon Developmental Ctr.*, 803 A.2d 611, 623 (N.J. 2002) (applying the continuing violation doctrine where the plaintiffs described "individual incidents common to the same two supervisors and related to the same basic subject, with no one incident constituting a discrete, stand-alone claim").

MCDSS is therefore entitled to summary judgment on Plaintiff's NJLAD claims as they relate to conduct occurring prior to February 13, 2016. *See Bibbs v. Twp. of Kearney*, Civ. No. 09-3769, 2011 WL 765970, at *5 (D.N.J. Feb. 25, 2011) (finding that the continuing violation doctrine did not apply to the plaintiff's hostile work environment claim and thus granting summary judgment in favor of the defendant). The Court next addresses Plaintiff's NJLAD claims related to conduct occurring after February 2016.

*b. Hostile Work Environment*

To establish a hostile work environment, a plaintiff "must show that the complained-of conduct (1) would not have occurred but for the employee's protected status, and was (2) severe or pervasive enough to make a (3) reasonable person believe that (4) the conditions of employment have been altered and that the working environment is hostile or abusive." *Williams*, 2020 WL 7391009, at *18. The Court has not identified a genuine dispute of material fact that would allow Plaintiff's hostile work environment claim to survive summary judgment. Although she made several complaints to the EEOC regarding a hostile work environment, Plaintiff's allegations before the EEOC were conclusory in nature. (SMF ¶¶ 13, 25, 31.) Her Complaint in this case is similarly conclusory in nature. (*See, e.g.*, ECF No. 18 ¶ 49 ("Defendants created a hostile work environment where the defendants offensive conduct was so pervasive or pervasive that [a] reasonable person would consider it intimidating hostile or evasive and the offensive conduct became a condition of plaintiff's continued employment.").) These allegations are insufficient to survive summary judgment. *See Allison v. New Jersey Transit Corp.*, Civ. No. 12-02493, 2014 WL 6474088, at *6 (D.N.J. Nov. 19, 2014) ("Because a party resisting summary judgment cannot rely merely upon 'bare assertions, conclusory allegations or suspicions to show the existence of a material issue,' . . . the Court will grant [the] [d]efendants' motion on the [p]laintiff's . . . NJLAD claims." (quoting *McCabe v. Ernst & Young*, 494 F.3d 418, 436-37 (3d Cir. 2007))).

After careful review of the record, the Court finds that a reasonable jury could not find that MCDSS's alleged conduct was severe or pervasive enough to sustain Plaintiff's hostile work environment claim. Often, such claims involve objectionable and clearly hostile comments or threats. *See, e.g.*, *Brown v. Joel Tanis & Sons, Inc.*, Civ. No. 13-02984, 2014 WL 2705262, at *2–3 (D.N.J. June 13, 2014) (finding "frequent and continual use of" racial slurs "combined with

numerous other threats and racist remarks" to plausibly state claim for hostile work environment). This is so because a hostile work environment is one "permeated with 'discriminatory intimidation, ridicule, and insult,' that is 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 116 (2002) (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993)); *Castleberry v. STI Grp.*, 863 F.3d 259, 264 (3d Cir. 2017) ("Whether an environment is hostile requires looking at the totality of the circumstances, including: 'the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'" (citation omitted)).

Again, Plaintiff's hostile work environment claims are mostly conclusory in nature. While Plaintiff does assert some specific allegations, such as a failure to provide proper training, (ECF No. 18 ¶ 17), that she was "accosted for wearing sneakers," (*id.* ¶ 21), and that she was accused of making false allegations related to hazardous paint fumes, (*id.* ¶ 15), these types of allegations have generally been found insufficient to sustain a hostile work environment claim. *See, e.g.*, *Wright v. Providence Care Ctr.*, LLC, 822 F. App'x 85, 97 (3d Cir. 2020) ("Occurrences such as being ignored, told once to 'shut up,' hearing an offhand comment about collecting disability, being temporarily pulled to work on another floor at the facility, receiving a marginally negative performance review without cause, and scheduling annoyances, while no doubt unpleasant, are not objectively 'extreme,' as is required for a viable . . . hostile workplace claim."); *Davis v. City of Newark*, 285 F. App'x 899, 903 (3d Cir. 2008) (affirming dismissal of a racial hostile work environment claim where the plaintiff was wrongly disciplined several times, called "a pain in my balls," ignored by co-workers who spoke only Spanish in her presence, had her tires slashed, and

was eventually transferred from her squad); *see also Nelatury v. Pennsylvania State Univ.*, 633 F. Supp. 3d 716, 736 (W.D. Pa. 2022) ("The allegations do not reach th[e] threshold [for hostile work environment]. [The plaintiff] does not allege insulting comments, taunting, the display of offensive cartoons, or the like. Being denied promotion and the opportunity to supplement a dossier does not create a workplace 'permeated with . . . intimidation, ridicule, and insult.'" (quoting *Morgan*, 536 U.S. at 116)); *Wolverton v. Goodyear Tire & Rubber Co.*, Civ. No. 13-2782, 2015 WL 851779, at *6 (D.N.J. Feb. 26, 2015) ("[A]n 'unhappy' workplace does not equate to a hostile work environment." (quoting *Dunkley v. S. Coraluzzo Petroleum Transporters*, 98 A.3d 1202, 1212 (N.J. Super. Ct. App. Div. 2014))); *Nuness v. Simon & Schuster, Inc*, 221 F. Supp. 3d 596, 601 (D.N.J. 2016) ("An employment discrimination law such as the NJLAD is not intended to be a "general civility code" for conduct in the workplace.")

Thus, summary judgment is granted in favor of MCDSS to the extent Plaintiff claims a hostile work environment.

### c. Age Discrimination

"[T]o establish a prima facie case under the NJLAD for unlawful termination . . . a plaintiff must demonstrate that he or she: (1) belongs to a protected class, (2) was qualified for the position held, (3) was terminated despite adequate qualifications, and (4) after termination the position remained open and the employer continued to seek applications." *Zive v. Stanley Roberts, Inc.*, 867 A.2d 1133, 1145 (N.J. 2005). Further, "in order to satisfy the fourth prong of the . . . prima facie case, [Plaintiff] must show that [s]he was replaced by someone sufficiently younger to create an inference of unlawful age discrimination." *Monaco v. Am. Gen. Assur. Co.*, 359 F.3d 296, 303 (3d Cir. 2004) (quoting *Swider v. Ha–Lo Indus., Inc.*, 134 F.Supp.2d 607, 625 (D.N.J.2001)).

Plaintiff alleges that MCDSS "discriminated and committed unlawful employment practices against [her], including termination, based upon her age." (ECF No. 18 ¶ 60.) Plaintiff further alleges that MCDSS "sought candidates to replace and did replace" her. (*Id.* ¶ 61.) Here, summary judgment in favor of MCDSS is warranted because there is no genuine dispute of fact that Plaintiff was not replaced by a significantly younger employee. Plaintiff claims she was not replaced "for a long time," (ECF No. 115-4 at 136), while MCDSS submits that Plaintiff was never replaced (SMF ¶ 55(n); *see also* ECF No. 115-4 at 171 ("Upon Plaintiff's termination, no one was hired as a senior receptionist in the Call Center.")). Plaintiff, however, has not cited to any evidence in the record before the Court that Plaintiff was ultimately replaced by a younger employee (*see generally* ECF No. 118), and Plaintiff cannot rely on her deposition testimony to contest the facts set forth by MCDSS. *See Charoff v. MarMaxx Operating Corp.*, Civ. No. 18-4712, 2020 WL 1694484, at *2 (E.D. Pa. Apr. 7, 2020) ("[W]hen the non-movant provides rebuttal evidence, conclusory, self-serving testimony 'is insufficient to withstand a motion for summary judgment.'" (quoting *Kirleis v. Dickie, McCamey & Chilcote, P.C.*, 560 F.3d 156, 161 (3d Cir. 2009))).

Plaintiff has not raised a genuine dispute of material fact with regard to her burden of establishing a prima facie case of age discrimination under the NJLAD. *See Pepe v. Rival Co.*, 85 F. Supp. 2d 349, 368 (D.N.J. 1999), *aff'd sub nom. Pepe v. Rival Corp.*, 254 F.3d 1078 (3d Cir. 2001) (granting summary judgment in favor of employer and noting that "[i]n cases where the position held by the discharged employee was eliminated or the employee was not replaced he or she must prove that a younger employee was either retained or treated more favorably."). The Court accordingly grants summary judgment in favor of MCDSS on Plaintiff's NJLAD age discrimination claim (Count Six).

### d. *Disability Discrimination*

To sustain a NJLAD claim based on disability discrimination, Plaintiff must establish that "(1) she was disabled within the meaning of the statute; (2) she was qualified to perform the essential functions of the position of employment; and (3) she suffered an adverse employment action because of the disability." *Fitzgerald v. Shore Mem'l Hosp.*, 92 F. Supp. 3d 214, 235 (D.N.J. 2015). MCDSS concedes that the first two factors are met. Plaintiff suffered from a spinal injury that entitled her to an accommodation. (ECF No. 115-3 at 17.) And, other than her disciplinary issues, Plaintiff was qualified to perform the essential functions of the position. (*Id.*)

Plaintiff claims that MCDSS discriminated against her because it required Plaintiff to submit additional medical records after it had already approved her request to wear sneakers as an accommodation for her disability. (ECF No. 18 ¶¶ 21-22.) Plaintiff's claims do not survive summary judgment. For one, Plaintiff testified in her deposition that all employees who had been approved to wear sneakers had to submit the same form. (ECF No. 115-4 at 121.) Plaintiff being required to submit an accommodation form similar to all other employees requesting accommodations is not an adverse employment action. *See Berry v. New Jersey State Prison*, Civ. No. 07-2284, 2009 WL 4827500, at *2 (D.N.J. Dec. 10, 2009) ("'Petty slights or minor annoyances that often take place at work and that all employees experience' do not constitute materially adverse retaliatory actions." (citation omitted)). "To constitute an adverse employment action, the action must be 'serious and tangible enough to alter an employee's compensation, terms, conditions, or privileges of employment.'" *Tourtellotte v. Eli Lilly & Co.*, 636 F. App'x 831, 842 (3d Cir. 2016). Here, it is undisputed that MCDSS never rescinded Plaintiff's accommodation to wear sneakers. (SMF ¶ 55(j).) While Plaintiff did eventually suffer an adverse employment action (*i.e.,* termination), there is no indication that Plaintiff failed to provide the records or forms or that her

termination was for anything other than her poor performance.  *See Rich v. State*, 294 F. Supp. 3d 266, 280 (D.N.J. 2018) ("[T]he [c]ourt finds [the plaintiff] did not suffer an adverse employment action because of her disability, but instead because of her performance.").  Plaintiff, therefore, cannot point to any facts which could lead a reasonable jury to find in her favor on her disability claims.  *See Anderson*, 477 U.S. at 251-52.  The Court grants summary judgment in favor of MCDSS on Plaintiff's NJLAD disability discrimination claim (Count Seven).

### e.   Ancestry/Descent/Religious Discrimination

To prevail on a claim for a NJLAD violation based on her ancestry, descent, or religion, Plaintiff must prove that (1) she engaged in a protected activity known to her employer, (2) she was subjected thereafter to an adverse employment decision by the employer, and (3) there was a causal link between the two.  *Feeney v. Jefferies & Co.*, Civ. No. 09-2708, 2010 WL 2629065, at *6 (D.N.J. June 28, 2010).

In support of her claim, Plaintiff alleges that "she professed her faith as a devout Jehovah's Witness and would call upon her Lord and Savior" and in response was "ridiculed and told she was insane and needed a psychiatrist."  (ECF No. 18 ¶ 14.)  Plaintiff later testified that this incident occurred between 2000 to 2003 (SMF ¶ 55(f).)  As previously discussed, Plaintiff's claim is barred by the two-year statute of limitations.  *See Montells*, 627 A.2d at 655.  Plaintiff also alleges that she was not trained on a program called Snap Trac, but she has not pointed to any evidence in the record that would link that allegation to her ancestry, descent, or religion.  In the FAC, she alleges that "the most recent [Snap Trac] trainee was a new hire and Caucasian and that [Plaintiff] and the other long time employees and Call Center operators were being passed over," but the undisputed facts show that 18 other agents in the department, 14 of whom were Caucasian, were also in the same position as Plaintiff in not receiving the training.  (SMF ¶ 55(c).)  There is nothing in the

record for a reasonable factfinder to infer that MCDSS's decision not to train Plaintiff on the Snap Trac platform was due to Plaintiff's ancestry, descent, or religion.

Thus, Plaintiff cannot point to any facts which could lead a reasonable jury to find that MCDSS engaged in discrimination based on Plaintiff's ancestry, descent, or religion.  *See Anderson*, 477 U.S. at 251-52.  The Court grants summary judgment in favor of MCDSS on Plaintiff's NJLAD ancestry, descent, and religious discrimination claim (Count Eight).

### f.  *Burden-Shifting*

The Court concludes that Plaintiff has failed to state a prima facie case for discrimination under the NJLAD.  Even if Plaintiff had stated a prima facie case, her claims would fail under NJLAD's burden shifting analysis, which is drawn from the United States Supreme Court's decision in *McDonnell Douglas Corp. v. Green*, 411 U.S. 79 2(1973).  First, the plaintiff bringing a NJLAD claim must establish a prima facie case of discrimination. *See Phillips v. Starbucks Corp.*, 624 F. Supp. 3d 530, 539 (D.N.J. 2022).  Second, "[i]f the plaintiff establishes a prima facie case, the burden shifts to the defendant to 'articulate some legitimate, non[-]discriminatory reason' for the adverse employment action." *Id.* (second alteration in original).  Finally, "[i]f the defendant does advance a legitimate, non-discriminatory reason, the burden shifts back to the plaintiff to prove that the reason is pretextual, and the real reason for the adverse action is discrimination." *Id.*

As described above, MCDSS had several legitimate nondiscriminatory reasons to discipline and ultimately terminate Plaintiff.  Plaintiff has failed to raise a genuine issue of fact that would permit a jury to infer that MCDSS's termination of Plaintiff was pretextual.  As a result, the Court finds that Plaintiff's NJLAD claims fail even if she could establish a prima facie case for discrimination based on her protected classes.  *See, e.g., Arenas v. L'Oreal USA Prod., Inc.*,

790 F. Supp. 2d 230, 239 (D.N.J. 2011), *aff'd*, 461 F. App'x 131 (3d Cir. 2012) (granting summary judgment on NJLAD claim where "[t]he record fail[ed] to cast any doubt on [the employer's] legitimate non-discriminatory reason for terminating [the plaintiff] in accordance with" the employer's disciplinary policy).

## IV.    CONCLUSION

For the reasons set forth above, and other good cause shown, the Defendant's Motion for Summary Judgment (ECF No. 115) is **GRANTED.** An appropriate Order follows.

Dated: November 7, 2024

GEORGETTE CASTNER
UNITED STATES DISTRICT JUDGE